The final argument of the morning is number 23-2366, Jackson against Collins. Counsel for the appellant was not able to be here, so we're just going to hear from the government as happily. May it please the court. Mr. Jackson was separated from the Army in 1974. He filed a claim in October 1992 for service connection for his left knee and neck injuries. In an April 1993 rating decision, the regional office denied that claim for service connection for the left knee and neck injury, and that was based on the evidence at the record of time. Some 30 years later, in 2021, he filed a claim, a supplemental claim this time, alleging Q in the unclear and unmistakable error in the April 1993 rating decision, and also reasserting a claim for service connection for the left knee and neck injury. The board at that time in 2021 denied the claim for Q based on a review of the record evidence from 1993, but granted service connection based on new and relevant evidence. What was that new and relevant evidence? Yes, so that's on Appendix 10, and it really goes to the nexus. I think there's a citation to a medical record that asked for arthritis, and a citation to the fact that this could be an injury occurring a long time ago, over time could create arthritis, and there's also repeated assertions and statements from Mr. Jackson about the injuries themselves that occurred during his service, and how they have gone over time. But did he make those assertions in the original claim? Here's the thing. I am pretty sure that we don't have jurisdiction over this, but I am troubled by the notion that it seems like the evidence he presented to the board in his very first application was I have these injuries that are causing this, and he gave his own statements about what caused it in service, if I'm reading the record correctly. At that time, they rejected it and said those don't connect up. But then when he reasserted it as both acute claim and as a new material evidence claim, I know we're using different words now. Sorry, I'm in the old system. A supplemental claim that he reiterated that same evidence, and that's largely what the board relied on to grant, or the RO, whichever one did it, to grant the claim, and that the only additional evidence was doctor's reports, and the only nexus in those reports was essentially him saying the same thing over and over again. Is that accurate? Your Honor, I would disagree slightly, because I think the statements in 2021 were much clearer in terms of this has been ongoing. The statements... But that doesn't go to... See, that's the thing. That may go to the actual injury and the severity and all that stuff. That, to me, doesn't go to nexus, does it? Yes, Your Honor. Why does it go to nexus? If it's... I forget what he said happened to incur these two injuries, but they were single incident things, weren't they? They were like, this happened to me, and this happened to me. So the fact that he keeps repeating that over and over again, the same exact statements, doesn't seem to make any difference. It should have been, if they accepted it later, they should have accepted it before. So I think two points on that one, Your Honor. In 1993, the board also weighed the fact that this was the first time they'd been hearing these complaints. There was no indication of a left near neck injury in the service treatment records. There was no indication of a left near neck injury in the separation exam. And this is what the regional office said, and that the first time that there was a complaint of a left knee injury was in 1978, four years after he had been separated from service. So they weighed that. The RO also indicated, the regional office indicated that they had reviewed the evidence, and they questioned him further, and they apparently didn't think the access was there. And then when you come into 2021, the issue is cued, so there has to be an undebatable error. And in this case, but for that error, there would have been a manifestly different outcome. And based on this evidence in 1993, they found that it wasn't an undebatable error to deny service connection at that time. So I think it's the evidence and the standard of review. If the evidence they'd rejected in the 90s was exactly the same as the evidence that they accepted in the 21 thing, would that lead to a finding of cue? So the evidence is the same? The evidence, all the evidence is precisely the same. They rejected it back then, and they've looked at it again and said, no, it should have been sufficient. That seems like it would be cue, wouldn't it? So I think in that scenario, the cue standard, as even I think the veterans pointed out, even if the evidence is in relevant equipose at the time of the later, there has to be an undebatable error. So I don't think it would be cue, even on the same evidence. I want to explore that. Do you know our recent decision in Baker against McDonough? No, Your Honor. This is absolutely at the center of my thinking. So it's December 19th, 2024. The Westlaw site is 2024 Westlaw 5165632. I think it says the following, that perhaps quite inconsistent with the only thing that the veterans court said about this benefit of the doubt rule point at the bottom of appendix page three and four. The veterans court recognizes that Mr. Jackson mentions the benefit of the doubt rule. It doesn't, the veterans court does not say, well, that doesn't apply because the evidence back in 1993 was not in equipose. Rough balance of positive and negative, whatever the regulatory version of that is. And therefore, that doesn't matter. It says it doesn't matter whether the benefit of the doubt rule applied on CUE. It's not enough. Well, Baker, I think they say that's not right. The fact is, if it's the same evidence both times and the benefit of the doubt rule applied, then it was that the benefit of the doubt rule declares as a matter of law that he was entitled to the benefits. And that was clear and unmistakable error. If the premise of the benefit of the doubt rule, the equipoise premise is true. So it vacated the veterans court decision, remanded and said, you got to go figure out whether the evidence was in equipoise. And it's something to be said. And there's something to be said for the idea that it was in equipoise if the evidence didn't materially change from here, 93 to 21. And the board or the R.O. decided, yay, after saying nay. Why doesn't, why don't we have to send this back for the veterans court to address that? So I think the first issue is the argument raised by Mr. Jackson, I think, was about sympathetic reading, not the benefit of the doubt rules. I'm not sure he made this argument in this court. And maybe that is a sufficient answer. But the veterans court recognized he made this argument at the bottom of appendix page three. And the veterans court does not say the evidence was not in equipoise. So the benefit of the doubt rule doesn't apply. It says that's not how CUE works. Approved CUE, it's not enough to show that the evidence was in relative equipoise. The claimant needs to show clear and unmistakable error that was outcome determinative. Baker says if it's, if it was in equipoise, that's clear and unmistakable evidence because that statute says what you have to do as a matter of law, namely award the benefit. So, Your Honor, I think if there were a legal issue in terms of a 1993, whether they misapplied the law, that'd be one issue that could be addressed. But I think at this point, when the veterans court itself, the board and the R.O. look at the evidence and weigh that evidence, I think that's an application of regulations to fact that is simply outside of the court's jurisdiction. Except that the veterans court did not say anything about whether the facts were such as to bring it within the benefit of doubt rule. This paragraph or two paragraphs of the veterans court decision seems to say that it would not matter as a matter of law to meet the CUE standard, whether it was, whether the benefit of the doubt rule applied or not. That's a legal proposition. And I would, I would certainly welcome a submission of a letter addressing Baker. Thank you, Your Honor. I welcome that opportunity. OK. And I mean, sorry, I just want to follow up. I think I honestly I wasn't because it wasn't raised. I wasn't familiar with it, too. But I think I understand what you're saying. I mean, I think that decision must say that. When you look back at a CUE determination, the veterans court, the board and the veterans court are obligated to decide on that original record, because we know the CUE is confined to the original record. If it was in equipoise and the original determination failed to apply the benefit of doubt rule, that's clear and unmistakable error. It's not even a clear and unmistakable factual error. It's a clear and unmistakable legal error. And in order to determine whether that applied, you have to look at whether it should have been in equipoise. And the thing that's troubling about this case is what we were discussing is it doesn't seem to me that the evidence the board relied on later to award benefits was materially different from the original evidence. Yes. And respectfully, on that point, Your Honor, I think I disagree. I think looking at evidence in 1993, it wasn't particularly strong for the nexus. And in 2021, it was significantly stronger. But it's unclear to me that the veterans court and the board made that finding. In fact, just tell me if I'm wrong, but I don't see that in the veterans court, that the veterans court commented at all on whether the evidence had changed. Yes, Your Honor. So they would have reviewed it under an arbitrary and capricious standard. The regional office on appendix 19 and 20, they specifically state, here's the new and relevant evidence. And then they walk through it. And then the board. Is that the appendix page 10? No, that's the board. That's the board of 10. Appendix page 10 has a whole page pointing to October 2007, October this, whatever. And Judge Hughes was exploring how much of that was actually new evidence as opposed to just him keep saying the same thing that he had been saying back in 1993. But just on the question, the veterans court did not say the evidence had changed. Maybe it didn't have to because the board did. Do you happen to remember, did Mr. Jackson in front of the veterans court argue that the evidence had changed or that it hadn't or what? No, Your Honor. I think the argument there was much more focused on the duty to assist, as I recall the arguments there. And then it changed here to sympathetic reading. We did include that in the record, though. The brief. Right, page 38. Yes, Your Honor. In looking at appendix 10, one of the ones that stuck out to me, of course, as I mentioned, was the medical opinion there about creating the risk of osteoarthritis. And then I think just above that, just a much more explicit statement stating that he was treated for these conditions and these conditions had existed since that time. I think that's not in the record from 1993. He does state in the record from 1993, I incurred these injuries, the neck injury from lifting and the knee injury from repetitive use. And he says he's had intermittent problems in 1993. And then the notes state, I probed for more information, the doctor at this time and was unable to get any more. So I do think it's a stronger case in 2021, especially with respect to the nexus. Do you want to give them the time? Yeah. Maybe can you submit a letter within seven days and we will notify the other side that it should submit a letter as well. I think maybe after your letter, just so that there's at least some sequence of responding. Yes, Your Honor. Addressing Appendix 3 and the Baker situation, I understand the issue. Right. Thank you, Your Honor. Thank you. The case is submitted and that completes our business for today. Court's adjourned.